IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JERRY CARLTON                                                                      PLAINTIFF

v.                              CIVIL NO. 3:25-cv-03023

FRANK BISIGNANO, Commissioner                                      DEFENDANT
Social Security Administration

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, Jerry Carlton, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* U.S.C. § 405(g).

### I.   Procedural Background:

Plaintiff protectively filed his application for DIB on September 15, 2021, alleging an inability to work since July 16, 2021, due to lung issues, diabetes, neck problems, high blood pressure, high cholesterol, neuropathy, right knee problems, and sleep apnea. (Tr. 13, 215). An administrative hearing was held on January 27, 2020, at which Plaintiff appeared with counsel and testified. (Tr. 13, 30–60). A vocational expert ("VE") also testified, and Plaintiff amended his onset date to December 31, 2022. (Tr. 47).

The ALJ issued an unfavorable decision on February 15, 2024. (Tr. 10–35). The ALJ found that Plaintiff had an impairment or combination of impairments that were severe: history

of cervical surgery in 2015 with subsequent stenosis, diabetes mellitus II with neuropathy. (Tr. 15). The ALJ found that Plaintiff also suffered from the following medically determinable impairments that were not severe: history of right knee surgery, obstructive sleep apnea, hypertension, hyperlipidemia, cardiomegaly, mild right and minimal left carpal tunnel syndrome, statin myopathy and depression disorder with anxious distress. (Tr. 15). The ALJ did not discuss any other alleged impairments, including post-COVID syndrome or other respiratory impairments, at this stage. (Tr. 15–18). After reviewing all evidence presented, the ALJ determined that through the date last insured, Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in 20 C.F.R., Subpart P, Appendix 1. (Tr. 18). The ALJ did specifically consider listing 3.02 for Chronic Respiratory Disorders, considering Plaintiff's pulmonary function studies in relation to his allegations concerning limitations from post-COVID pneumonia. *Id*. The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that Plaintiff could have no concentrated exposure to dust, fumes or other pulmonary irritants; no extreme heat; and only occasional bilateral overhead reaching. (Tr. 18–27).

The ALJ found Plaintiff could perform his past relevant work as a mayor (DOT 188.117-114) as actually and as generally performed. (Tr. 28) The ALJ found Plaintiff had not been under a disability, as defined by the Act, from December 31, 2022, through February 15, 2024, the date of her decision. (Tr. 28).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which was denied on March 5, 2025. (Tr. 1–5). Subsequently, Plaintiff filed this action. (ECF No. 2). The parties have filed appeal briefs, and this case is before the undersigned for report and

recommendation pursuant to 28 USC §636 (b). (ECF Nos. 11, 16, 17). The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

  **II.**  **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving their disability by establishing a physical or mental disability that has lasted at least one year and that prevents them from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in light of his or her residual functional capacity if the final stage of the analysis is reached. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises the following issues in this matter: 1) whether the ALJ made a reversible error by failing to find Plaintiff's post-COVID syndrome to be a medically determinable impairment at step two; 2) whether the ALJ failed to satisfy her step five burden by conflating Plaintiff's actual jobs as mayor with a job in the Dictionary of Occupational Titles ("DOT") which is not analogous; and 3) whether the ALJ erred by failing to include manipulative limitations in the RFC. (ECF No. 11). The Commissioner argues that the ALJ properly considered Plaintiff's post-COVID syndrome but does not directly address Plaintiff's argument that the ALJ erred at step two by failing to address post-COVID syndrome, instead citing to the ALJ's examination of medical records in the RFC determination. (ECF No. 16, pp. 1–3). The Commissioner argues that the ALJ's citation to the DOT code for city manager is harmless error

as the ALJ also found Plaintiff could perform his past mayoral work as actually performed; and that Plaintiff has the burden at step four to show he cannot perform his past relevant work and has not met that burden. (ECF No. 16, p. 4). Next, the Commissioner argues the ALJ did not need to include additional manipulative limitations in the RFC, as the record does not support the need for additional manipulative limitations. (ECF No. 16, p. 5). The Commissioner cites to largely normal physical exam findings at a consultative examination in February of 2022, normal x-rays of Plaintiff's hands, a lack of manipulative limitations in the same February 2022 consultative exam findings, and Plaintiff's activities including his new work as an alderman and volunteer work at a church food pantry. *Id*.

### A. POST-COVID SYNDROME

While it is not reversible error to fail to find an impairment severe at step two, so long as said impairment is considered in the RFC assessment, failure to find an impairment severe at step two, and then failing to consider the effect of the impairment on Plaintiff's RFC is reversible error. *See Misty G. v. Berryhill*, 0:18-CV-00587-KMM, 2019 WL 1318355 (D. Minn. Mar. 22, 2019); *Coleman v. Astrue*, No. 4:11CV2131 CDP, 2013 WL 665084, at *10, 20 (E.D. Mo. Feb. 25, 2013) (finding the ALJ's failure to find Coleman's back pain a severe impairment, and then failing to consider the effect of her back pain in combination with her other severe impairments was reversible error).

Here, the ALJ not only failed to find Plaintiff's post-COVID syndrome to be severe, she also failed to find post-COVID syndrome or any other respiratory impairment to be a medically determinable impairment. (Tr. 15–16). While the ALJ did state "[t]he undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity," this statement would arguably not cover

5

any respiratory impairment, as none were found to be a medically determinable impairment. (Tr. 16). Plaintiff argues that the ALJ is prevented by operation of law from considering Plaintiff's limitations related to post-COVID syndrome in the RFC. (ECF No. 11, p. 5). Plaintiff argues this is due to the ALJ's failure to recognize long COVID as a medically determinable impairment and cannot be cured by discussion of limitations related to this impairment, or adopting restrictions to accommodate for this impairment in the RFC. (ECF No. 11, pp. 2, 4–7). While Plaintiff's interpretation of the regulations is well argued, it is not supported by the cases cited as the ALJ did in fact consider and adopt limitations related to Plaintiff's post-COVID symptoms in the RFC assessment.

Plaintiff cites to a number of cases and states that the ALJ's refusal to recognize long COVID as a medically determinable impairment excluded this condition from the RFC by operation of law, and states that courts have consistently held that this type of error requires remand. (ECF No. 11, p. 2). However, the cases Plaintiff cites do not support this proposition, but rather the already stated principle that a failure to find an impairment severe at step two and then failing to consider the related impairments at step four requires remand. *Shari B. v. Kijakazi*, 2023 U.S. Dist. LEXIS 166029, *17–18 (D. Minn. Sept. 19, 2023) (Finding that it was not harmless error to omit osteoporosis as a medically determinable impairment and then fail to remedy that error at step four as the ALJ did not consider the effects of osteoporosis in the RFC determination). This case must be differentiated from *Matthews v. Kijakazi* — despite the ALJ's omission of detailed analysis regarding her decision to omit respiratory impairments at step two––because the ALJ went on to provide analysis of Plaintiff's respiratory impairments and limitations at step three and in the RFC determination. *See Matthews v. Kijakazi*, 2022 U.S. Dist. LEXIS 169691 (N.D. Fla. Aug. 20, 2022); (Tr. 18–27). Ultimately, the cases cited by Plaintiff

6

were remanded not purely because a severe impairment was omitted or found not medically determinable, but due to a failure to consider and account for limitations related to the omitted impairment in the RFC. *Morgan v. Saul*, 2020 U.S. Dist. LEXIS 52562, at 18–19 (E.D. Mo. Mar. 26, 2020)("Because the ALJ did not take into consideration evidence of Morgan's borderline intellectual functioning when formulating her RFC, reversal and remand is required");*Carter v. Kijakazi*, 2022 WL 509359, at 5 (S.D. Ga. Feb. 1, 2022)(Finding the ALJ's failure to find fibromyalgia to be a medically determinable impairment affected Plaintiff's substantial rights where the ALJ did not consider Plaintiff's fibromyalgia in the RFC).

Plaintiff argues that his long COVID symptoms included respiratory impairments, as well as severe fatigue, cognitive dysfunction, and voice fatigue. (ECF No. 11, p. 3). At step two the ALJ considered Plaintiff's mental impairments, including findings at a March of 2023 consultative examination that Plaintiff had no cognitive deficits including issues with memory, concentration, or communication. (Tr. 16). The ALJ found this opinion to be persuasive as it was supported by examination findings and was consistent with treatment notes reflecting a lack of mental health treatment and/or a reported lack of reported or observed cognitive, mental, and/or behavioral symptoms and/or limitations. *Id*. The ALJ also considered the findings of nonexamining state agency consultants. (Tr. 16). Diane Kogut, Ph.D., found Plaintiff had no mental medically determinable impairments, and that further development was not warranted. (Tr. 78). Margaret Podkova, Psy.D., considered Plaintiff's disability report which included reports of struggles with depression, anxiety, mental fog, anger issues, and weight gain. (Tr. 88–89). Dr. Podkova considered the medical evidence of record, which did not include specific mental health treatment but did show complaints of mood swings to Plaintiff's primary care physician in February of 2023, as well as the mental consultative exam which took place in

March of 2023. *Id*. Dr. Podkova opined that Plaintiff's medically determinable impairments were associated with mildly limiting symptoms, but that Plaintiff's abilities support intact adult functional capacity with no evidence of significant limitations, and ultimately found these impairments were not severe. (Tr. 89). The ALJ found these opinions to be persuasive as they were supported by their review of the medical evidence of record and consistent with findings from Plaintiff's consultative examination. (Tr. 16).

At step three, the ALJ considered Listing 3.02 for Chronic Respiratory Disorders, noting that Plaintiff had a number of pulmonary function studies related to his post-COVID pneumonia which demonstrated no mild-moderate pulmonary restriction with no obstructive defect and no pulmonary function study values indicating that Plaintiff met the listing. (Tr. 18). Listing 3.02 sets $FEV_1$ at or below 1.6, FVC at or below 2.0, for a man over the age of 20 and Plaintiff's height. Plaintiff's spirometry report on December 29, 2021, one year before the amended onset date, showed $FEV_1$ values as low as 2.51 and FVC values as low as 2.78, both above the standard for Listing 3.02. These results were interpreted as showing no obstruction but suggesting restriction, noting that if restriction was of concern clinically formal lung volumes should be obtained to better evaluate. (Tr. 1284). Spirometry on May 26, 2022, showed $FEV_1$ values as low as 2.69 and FVC values as low as 3.22, both above the standard for Listing 3.02. These results were interpreted as mild restrictive ventilatory defect without bronchodilator response and mild reduction in DLCO. (TR. 1364).

Most vitally, the ALJ considered Plaintiff's post-COVID syndrome limitations in the RFC. The ALJ restricted Plaintiff to sedentary work with additional pulmonary restrictions. (ECF No. 18). The ALJ considered Plaintiff's May of 2022 reports that shortness of breath and mental fog inhibited his work as mayor, his account that his wife had taken over paying bills and

8

that he had a shorter temper than he had before, and his report that fatigue and shortness of breath kept him from going into the office while employed as mayor and loss of voice made him unable to have phone conversations. (Tr. 19–20). The ALJ also considered the third-party statements of Darlene Harwood and Sandra Russel, which reported their observations of shortness of breath, concentration, memory issues, and difficulties with adversity, as well as his reduced ability to do his mayoral work. (Tr. 20). However, she ultimately found their observations were somewhat helpful but were not persuasive in substantiating severe/disabling physical limitations as they were not supported by the objective medical evidence and were inconsistent with Plaintiff's active reported activities of daily living. (Tr. 27).

The ALJ found Plaintiff's allegations of disabling limitations and pain inconsistent with his active daily activities of daily living including continuing to work as the mayor of Green Forest, subsequent work as an alderman, and volunteering at his church's food bank. (Tr. 25).

The ALJ considered Plaintiff's consultative examination with the Arkansas Occupational Health Clinic in February of 2022, which included an assessment of shortness of breath and fatigue with moderate exertion after long COVID-19 and recommended that Plaintiff avoid safety-sensitive activities. (Tr. 26). The ALJ found this opinion to be somewhat persuasive, but that the Plaintiff's cervical impairment and combination of symptoms required more restrictions as reflected in the RFC. *Id*.

The ALJ considered the questionnaire submitted by Dr. Charles Horton in December of 2023, which included impairments of sleep apnea with O2, restrictive lung disease, and chronic post-COVID syndrome. (Tr. 26). Dr. Horton opined that Plaintiff would require breaks that would not be accommodated by normal breaks, would have good days and bad days, and would miss more than four days a month as a result of his impairments or treatment. *Id*. The ALJ did

9

not find Dr. Horton's assessments persuasive, as they were not supported by any objective evidence and the opinion regarding absenteeism was inconstant with Dr. Horton's own treatment notes reflecting a lack of emergency room visits or crisis interventions after the hospital admission for pneumonia—noting that Plaintiff only visited primary care and Dr. Horton an average of four times a year in 2022–2023. (Tr. 27).

The ALJ considered the opinions of nonexamining consultants Alice Davidson, MD, and Johnanthan Norcross, MD. (Tr. 27). Dr. Davidson opined that Plaintiff would be restricted to medium exertional work with restrictions for overhead bilateral reach and avoidance of pulmonary irritants, and Dr. Norcross affirmed this opinion at reconsideration. (Tr. 27, 79–81, 90–93) The ALJ considered these opinions and found that they were persuasive with regard to the need for pulmonary and overhead reach restrictions, but that Plaintiff would be more limited than the opined medium exertional work, and would require a restriction to sedentary work. (Tr. 27).

The ALJ considered Plaintiff's shortness of breath and fatigue alongside the objective evidence of daytime oxygen saturations over 90% with occasional nocturnal decreased SPO2 levels and considered the May of 2022 pulmonology consultation and pulmonary results throughout the record demonstrating mild to moderate restrictions. (Tr. 25). The ALJ specifically found that Plaintiff's spirometry results were considered and were accommodated in the RFC by the inclusion of the restriction to avoid pulmonary irritants. (Tr. 26).

Plaintiff's argument is understandable based upon his reading of the regulations, but ultimately this case is differentiated from the cases he cites by the ALJ's consideration of Plaintiff's post-COVID limitations in the RFC. Even if the ALJ erred in failing to find Plaintiff's

10

post-COVID syndrome a medically determinable impairment at step two, it was considered and accounted for in the RFC assessment. Therefore, remand is not recommended on this point.

### B. STEP FIVE

Plaintiff argues the ALJ erred in finding Plaintiff was able to perform his past relevant work as mayor, while citing to and considering a different occupation which is city manager as defined in the Dictionary of Occupational Tiles (DOT) code 188.117-114. (ECF No. 11, p. 7). Plaintiff argues that the ALJ conflated Plaintiff's actual job as a part-time elected politician with a full-time professional administrative role, and thus left the vocational findings unsupported by substantial evidence. Plaintiff believes the position of mayor has no direct counterpart in the DOT and could not be evaluated at step four as generally performed. Plaintiff argues the VE did not provide factual foundation or analysis as to how Plaintiff's actual work as the part-time mayor of a small town equated to the full-time professional work of a city or county manager. (ECF No. 11, p. 8). Plaintiff argues that the city manager job consisted of other duties, required more education, and was further differentiated from Plaintiff's actual job of mayor in that returning to such work would not require running and then winning an election. (ECF No.11, p. 10).

Defendant's brief does not fully address Plaintiff's arguments but argues that it was harmless error to cite to the DOT code of city manager as his past relevant work, despite the substantial differences between a city manager and an elected mayor as pointed out by Plaintiff. These differences were not analyzed by the VE during testimony or by the ALJ in the decision, and the differences are significant. Defendant argues that the ALJ citing to the wrong DOT code was harmless error, as the ALJ also found Plaintiff could do his past relevant work of mayor as actually performed and that the ALJ does not have to rely on the description of a claimant's past

work as set out in the DOT, but can rely on information provided by the claimant regarding their duties. (ECF No. 16, p. 4). However, the ALJ does not appear to have relied on Plaintiff's description of his work as mayor and certainly does not say so in the opinion directly relating Plaintiff's abilities only to the DOT code for the job of city manager and not acknowledging that the job of mayor differed in any way except to note that his pay rate made this part-time job substantial gainful activity. (Tr. 28).

In his reply brief, Plaintiff argues the ALJ further erred by failing to make findings regarding what Plaintiff's job duties as mayor truly entailed—a job sometimes described as two hours a week and sometimes described as 60 hours a week—and that the ALJ's failure to resolve conflicts in the evidence along with his failure to perform the substantial gainful activity ("SGA") analysis requires remand. (ECF No. 17, pp. 5–6). Plaintiff notes that there was SGA analysis in the record completed by the SSA field office, which found Plaintiff's countable income was $1,000 per month for the period from July 2021 forward, which is below the standard for SGA, based upon his reduced hours, other employees handling some of his duties, and his extremely diminished hours despite the salary remaining fixed. (ECF No. 17, pp. 6–7; Tr. 233, 273 ).

At Step Four, an ALJ "has a duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before [the ALJ] determines that she is able to perform her past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989); *Groeper v. Sullivan*, 932 F.2d 1234, 1238-39 (8th Cir. 1991); *Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013). The ALJ does that by analyzing the medical records and medical opinions and seeking testimony from the claimant herself about past work. He may consult the

12

DOT to obtain vocational evidence. *Kirby v. Sullivan*, 923 F.2d 1323, 1327 (8th Cir. 1991). In an Eighth Circuit case where the ALJ specifically referenced the DOT, the past relevant job, and the job's DOT number, substantial evidence supported his Step Four finding. *Young, supra*, at 491. When an ALJ makes only a brief and conclusory statement that the claimant can return to past work, without conducting the proper inquiry, reversal is required. *Groeper, supra*, at 1238-1239.

This case is complicated by the ALJ's unexplained decision to treat the city manager job as if it were Plaintiff's actual past relevant work, without addressing Plaintiff's objections to key differences including the question of whether Plaintiff's past work as mayor was part-time work, whether it was substantial gainful activity, and whether it was analogous to the job the ALJ actually cited to but did not acknowledge was not job of mayor, DOT 188.117-114. There are multiple issues with the ALJ's analysis of Plaintiff's past relevant work, including a lack of clarity as to what the mayoral duties and hours were found to be, lack of analysis connecting the job of city or county manager to the requirements of Plaintiff's work as mayor, and lack of SGA analysis that require further deliberation by the ALJ. The Court cannot meaningfully review whether the ALJ's decision regarding Plaintiff's ability to return to his past work is correct, given the current paucity of analysis and therefore recommends remand for further analysis.

### C. MANIPULATIVE LIMITATIONS

Plaintiff argues that the ALJ committed reversible error by failing to include manipulative limitations in the RFC assessment, despite finding his diabetic neuropathy to be severe and acknowledging Plaintiff's bilateral carpal tunnel syndrome as a medically determinable impairment. (ECF No. 11, p. 11). Plaintiff argues this omission is particularly significant because sedentary work still requires substantial use of the hands and fingers. (ECF No. 11, p. 13). Plaintiff further argues that the ALJ provided no explanation for why

manipulative limitations were not warranted despite finding his diabetic neuropathy to be severe, nerve conduction studies showing bilateral carpal tunnel syndrome, consistent clinical findings, Plaintiff's testimony, and third-party statements corroborating manipulative difficulties. (ECF No. 11, p. 14).

Defendant does not directly address Plaintiff's assertion that the ALJ erred by failing to address the lack of manipulative limitations in the RFC, arguing instead that the record does not support the need for additional manipulative limitations. (ECF No. 16, p. 5). Defendant points out that the ALJ considered Plaintiff's activities and largely normal physical exam findings. *Id*.

The ALJ did acknowledge Plaintiff's allegations of bilateral pain in his hands and feet. (Tr. 19). The ALJ noted Plaintiff had nerve conduction studies in November of 2015 which demonstrated right median mild sensory neuropathy at the carpal tunnel and left median minimal sensory neuropathy at the carpal tunnel. (Tr. 20–21). The ALJ noted Plaintiff's independent medical evaluation in September of 2016 included reports of numbness in his fingers and weakness in both hands that resulted in dropping things. (Tr. 21). The ALJ noted Plaintiff's report in May of 2018 to his primary care physician that he had pain and weakness in his neck and both upper extremities, for which he was prescribed Lyrica in 2019. *Id*. The ALJ noted Plaintiff was taking Lyrica for diabetic neuropathy in September of 2021. (Tr. 22). The ALJ reviewed Plaintiff's appointment with Dr. Horton in February of 2022, where he was noted to still have some neuropathy in his upper extremities from his cervical impairment that was not related to his diabetes. *Id*. The ALJ noted a May of 2023 visit with Dr. Horton where Plaintiff's upper extremity neuropathy was described as mild. (Tr. 24). The ALJ noted Plaintiff's August of 2023 appointment with Dr. Horton, where his upper extremity neuropathy was noted to be stable with no muscle atrophy or increased pain. *Id*. The ALJ did provide a little analysis for peripheral

neuropathy, noted Plaintiff was prescribed Lyrica in 2019 and considered Plaintiff's testimony that the neuropathy in his feet did not really affect his ability to walk or stand. (Tr. 24). However, the ALJ did not mention Plaintiff's separate neuropathy in his upper extremities which were related to cervical spine issues.

The ALJ considered Dr. Horton's questionnaire from December of 2023, and found it was not persuasive with regard to a restriction to no repetitive activities due to neuropathy in his upper extremities, as it was not supported by objective evidence during the relevant time period and the lack of complaints and treatment for symptoms that would cause such limitations. (Tr. 26).

While the ALJ did recount treatment notes and made findings discounting some of the opinion evidence regarding Plaintiff's bilateral upper extremity neuropathy, it remains unclear from his decision how the ALJ believes Plaintiff's upper extremity neuropathy would impact his RFC.

A claimant's RFC must fully account for all of his or her impairments, whether severe or non-severe. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). By definition, a severe impairment is one that significantly limits a claimant's ability to engage in basic work activities. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). "A finding that an impairment is severe cannot square with a conclusion that it imposes no limitations. It is axiomatic that a severe impairment imposes limitations, and an impairment that imposes no limitations is not severe." *Pickens v. Berryhill*, No. 4:18-CV-212-JLH-BD, 2019 WL 1219707, at *2 (E.D. Ark. Mar. 15, 2019), report and recommendation adopted, No. 4:18-CV-212-JLH-BD, 2019 WL 1449618 (E.D. Ark. Apr. 1, 2019); *see also Franklin v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-01037-BSM-ERE, 2021 WL 4950299, at *2 (E.D. Ark. Oct. 25, 2021), report and recommendation

adopted, No. 4:20-CV-01037-BSM, 2022 WL 823579 (E.D. Ark. Mar. 17, 2022) ("The ALJ cannot plausibly find at Step Two that Ms. Franklin's impairment significantly limits her ability to perform basic work activities and also disregard the impairment in determining her RFC."). In this case, the ALJ found Plaintiff had the severe impairments history of cervical surgery with stenosis, diabetes mellitus II with neuropathy, and a nonsevere impairment of mild right and minimal left carpal tunnel syndrome. However, it remains unclear from the RFC that the ALJ considered how these impairments would inhibit Plaintiff's RFC with regard to his hand function.

The Court recommends remand for the ALJ to more clearly account for all of Plaintiff's limitations in the RFC determination.

### III. Conclusion

Based on the foregoing, it is recommended that the Commissioner's final decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of February 2026

/s/ *Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE